**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| *Plaintiff,* | ) |
| | ) Case No. 2:16-cv-1038-LRR |
| v. | ) |
| | ) District Judge Linda Reade |
| NGL CRUDE LOGISTICS, LLC (f/k/a Gavilon, LLC), | ) Magistrate Judge Kelly Mahoney |
| *Defendant.* | ) |
| | ) |

**CONSENT DECREE
FOR SETTLEMENT OF CLAIMS INVOLVING
NGL CRUDE LOGISTICS, LLC (F/K/A GAVILON, LLC)**

# TABLE OF CONTENTS

I.      INTRODUCTION.................................................................................................1
II.     JURISDICTION AND VENUE .........................................................................3
III.    APPLICABILITY .................................................................................................3
IV.     DEFINITIONS .....................................................................................................3
V.      CIVIL PENALTY ...............................................................................................4
VI.     RIN RETIREMENT REQUIREMENTS...........................................................6
VII.    REPORTING REQUIREMENTS .....................................................................8
VIII.   STIPULATED PENALTIES ..............................................................................9
IX.     FORCE MAJEURE ...........................................................................................12
X.      DISPUTE RESOLUTION ................................................................................14
XI.     INFORMATION COLLECTION AND RETENTION...................................16
XII.    CERTIFICATION .............................................................................................17
XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS......................17
XIV.    26 U.S.C. § 162(F)(2)(A)(II) IDENTIFICATION.............................................18
XV.     COSTS.................................................................................................................19
XVI.    NOTICES ...........................................................................................................19
XVII.   RETENTION OF JURISDICTION ................................................................20
XVIII.  MODIFICATION...............................................................................................21
XIX.    TERMINATION ...............................................................................................21
XX.     PUBLIC PARTICIPATION .............................................................................22
XXI.    SIGNATORIES/SERVICE ...............................................................................22
XXII.   INTEGRATION.................................................................................................23
XXIII.  FINAL JUDGMENT .........................................................................................23

# I.    INTRODUCTION

A.      Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA") filed a complaint in this action on October 4, 2016 (amended on January 9, 2017 and September 28, 2017) alleging that Defendant NGL Crude Logistics, LLC (f/k/a Gavilon, LLC) ("Defendant") and Western Dubuque Biodiesel, LLC ("Western Dubuque") violated Section 211(*o*) of the Clean Air Act ("CAA" or "Act"), 42 U.S.C. § 7545(*o*), and the regulations issued thereunder at 40 C.F.R. Part 80, Subpart M.

B.      On April 11, 2017, the Court entered a Consent Decree between the United States and Western Dubuque resolving the United States' claims against Western Dubuque (Counts Two, Three, Four, Five, and Six).

C.      The Complaint alleges that in 2011, Defendant (then known as Gavilon LLC): violated 40 C.F.R. § 80.1429(f) by failing to retire approximately 36 million RINs when it sold biodiesel to Western Dubuque for reprocessing (Count One); violated 40 C.F.R. § 80.1460(e) when it caused Western Dubuque to commit prohibited acts that led to the generation of approximately 36 million invalid RINs (Count Seven); and violated 40 C.F.R. § 80.1460(b)(2) when it transferred approximately 36 million invalid RINs to third parties (Count Eight).

D.      In 2011, Gavilon, LLC was owned by The Gavilon Group, LLC. Thereafter, The Gavilon Group, LLC transferred its ownership interest in Gavilon, LLC to an affiliated company, Gavilon Energy Intermediate, LLC. On December 2, 2013, Gavilon Energy Intermediate, LLC, sold 100% of the ownership interests in Gavilon, LLC to an indirect subsidiary of NGL Energy Partners LP. Gavilon, LLC changed its name to NGL Crude Logistics, LLC effective March 31, 2014.

E.      On July 3, 2018, the Court entered an order granting summary judgment against Defendant based upon Gavilon, LLC's conduct in 2011 for liability on Counts One, Seven, and

1

Eight. The Court determined as a matter of law that: 1) Defendant failed to retire approximately 35.7 million RINs in violation of 40 C.F.R. § 80.1429(f); 2) Defendant caused Western Dubuque to illegally generate approximately 36 million invalid RINs, in violation of 40 C.F.R. § 80.1460(e); and 3) Defendant transferred approximately 36 million invalid RINs to third parties, in violation of 40 C.F.R. § 80.1460(b)(2).

      F.     Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint. Prior to reaching this settlement, Defendant moved for reconsideration of the Court's order regarding Defendant's liability under Count Seven.

      G.     Defendant asserts that its ability to pay is limited and that it does not have an ability to pay a penalty greater than that required by this Consent Decree, and provided financial information and deposition testimony demonstrating, among other things, that it had nearly violated financial covenants included in its credit agreements on previous occasions and that those covenants may have been violated had Defendant's lenders refused to amend them.

      H.     The financial information Defendant provided has been reviewed by the United States' financial expert, who concurred that the financial covenants limit Defendant's ability to pay.

      I.     The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

      NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

2

## II.   JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and CAA Sections 205(b) and 211(d)(2), 42 U.S.C. §§ 7524(b) and 7545(d)(2). The Parties agree that this Court has personal jurisdiction over them. Venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a).

2.      For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

## III.   APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, parent entities, or other entities or persons otherwise bound by law.

4.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## IV.   DEFINITIONS

5.      Terms used in this Consent decree that are defined in the Act or in 40 C.F.R. Part 80, Subpart M shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Act" or "CAA" shall mean the Clean Air Act, as amended, 42 U.S.C. §§ 7401, *et seq.*

b.      "Complaint" shall mean the complaint filed by the United States, as amended on September 28, 2017, at ECF No. 72.

3

c.      "Consent Decree" or "Decree" shall mean this Consent Decree.

d.      "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

e.      "Defendant" shall mean NGL Crude Logistics, LLC and its parent entities.

f.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

g.      "Effective Date" shall mean the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

h.      "Interest" shall mean interest at the rate specified in 28 U.S.C. § 1961.

i.      "Paragraph" shall mean a portion of this Decree identified by an arabic numeral.

j.      "Parties" shall mean the United States and Defendant.

k.      "RIN" shall mean Renewable Identification Number as defined in 40 C.F.R. § 80.1401.

l.      "Section" shall mean a portion of this Decree identified by a roman numeral.

m.      "United States" shall mean the United States of America, acting on behalf of EPA.

## V.    CIVIL PENALTY

6.      Defendant shall pay to the United States the principal amount of $25 million as a civil penalty, as provided in this Section.

4

7.     The civil penalty shall be paid in two installments. Defendant shall make the first payment of $12.5 million within 30 Days after the Effective Date. Defendant shall make the second payment of $12.5 million within one year after the Effective Date. Defendant may, at its election, make the entire payment of $25 million within 30 Days after the Effective Date, in which case the second payment referenced in this Paragraph and in Paragraph 8 need not be made.

8.     The first payment, if timely paid, shall include no Interest. The second payment shall include an additional sum for Interest accrued on the unpaid portion of the civil penalty calculated from the Effective Date to the date of the second payment. No interest shall be due on the second payment if it is paid within 30 Days of the Effective Date.

9.     The Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Northern District of Iowa shall send a calculation of the Interest due to Defendant. Defendant may pay any installment payment prior to the due date, but must contact the FLU in advance for a determination regarding the amount of Interest to be included with the payment.

10.    If Defendant fails to make any payment required by Paragraph 7 by the required due date, all remaining payments and all accrued Interest shall become due immediately upon such failure. If the first payment is not timely made, Interest shall accrue from the Effective Date. Interest shall continue to accrue on any unpaid amounts until the total amount due has been received. Interest required by this Paragraph shall be in addition to any stipulated penalties owed pursuant to Paragraph 25.

11.    Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the FLU of the United States Attorney's Office for the Northern District of Iowa

5

after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

> Kurston McMurray
> Senior Vice President/General Counsel/Secretary
> NGL Energy Partners LP
> Kurston.McMurray@nglep.com

on behalf of Defendant. Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XVI (Notices).

12.     At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the United States via email or regular mail in accordance with Section XVI; and (iii) to EPA in accordance with Section XVI. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. NGL Crude Logistics, LLC* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-11163.

13.     Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating its federal income tax.

## VI.     RIN RETIREMENT REQUIREMENTS

14.     Defendant shall retire a total of 36 million valid D4 RINs according to the following schedule:

a.     No later than December 31, 2018, Defendant shall retire at least 18 million valid 2017 or 2018 D4 RINs.

6

b.      No later than December 31, 2019, Defendant shall retire a sufficient number of valid D4 RINs such that the cumulative total of RINs retired pursuant to this Paragraph is 36 million RINs.

c.      RINs retired between January 1, 2019 and March 31, 2019 shall be 2017, 2018 or 2019 RINs.

d.      RINs retired between April 1, 2019 and December 31, 2019 shall be 2018 or 2019 RINs.

15.     The parties acknowledge that the Effective Date may occur after December 31, 2018. Defendant agrees that it is bound to perform duties identified in Section VI (RIN Retirement Requirements) even if those duties arise prior to the Effective Date. The United States agrees that valid D4 RINs retired by Defendant at any time after lodging of the Consent Decree shall count toward Defendant's RIN retirement obligations under the Consent Decree, provided that such RIN retirement is in compliance with the terms of this Section. In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter the Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

16.     Defendant shall retire the RINs identified in Paragraph 14 in the EPA Moderated Transaction System using EMTS Retirement Code 70 – Enforcement Obligation. The retirement transaction must include "OECA – U.S. v. NGL Crude Logistics" in the EMTS submission comment field of the retirement transaction.

17.     Within 30 Days of retiring RINs under Paragraph 14 or Paragraph 18, Defendant shall submit to the United States a RIN Retirement Report that documents: (a) the EMTS

submission date(s) that the RINs were retired; (b) the number, D-Code and vintage (year) of each RIN that was retired; and (c) the EMTS transaction ID for each RIN retirement transaction.

18.    Should Defendant determine, or be informed by EPA, that any RINs it retired in accordance with Paragraph 14 are invalid, Defendant shall retire an equivalent number of valid replacement RINs within 60 Days of that event; provided that in the case of EPA informing Defendant that the RINs are invalid EPA provides Defendant with the basis for EPA's determination that the RINs are invalid in writing.

19.    If after termination of this Consent Decree pursuant to Section XIX (Termination), Defendant determines, or is informed by EPA, that any RINs retired in accordance with Paragraph 14, above, are invalid, Defendant shall, regardless of the termination of this Consent Decree, be required to retire an equivalent number of valid replacement RINs within 60 Days of that event in accordance with the provisions of this Section.

## VII.    REPORTING REQUIREMENTS

20.    Any submittal required by Section VI (RIN Retirement Requirements) or Section IX (Force Majeure) shall be signed and certified by a corporate officer of Defendant authorized to make such certification(s) on behalf of Defendant and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

21.    All reports shall be submitted to the persons designated in Section XVI (Notices).

8

22.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

23.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

24.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

25.     Late Payment of Civil Penalty. If Defendant fails to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $10,000 per Day for each Day that the payment is late during the first 15 Days and $20,000 for each Day thereafter.

26.     Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Paragraph 17:

| Penalty per violation per Day | Period of Noncompliance |
|---|---|
| $1,000 | 1st through 14th Day |
| $5,000 | 15th through 30th Day |
| $10,000 | 31st Day and beyond |

27.     RIN Retirement Requirements. If Defendant fails to retire the number of RINs specified in Paragraph 14 or 18, Defendant shall pay a stipulated penalty of $5,000 per Day for each Day that Defendant is late meeting its RIN retirement requirements during the first 20 Days,

9

$10,000 for Days 21-30, and $46,192 for each Day thereafter. In addition, Defendant shall pay a one-time stipulated penalty of $0.40 per RIN not retired by the date specified in Paragraph 14 or 18.

28.     Use of Invalid RINs. If Defendant uses invalid RINs to meet its requirements under Paragraph 14, Defendant shall pay a one-time stipulated penalty of up to $0.40 per invalid RIN unless Defendant demonstrates that it meets the affirmative defense criteria set forth in 40 C.F.R. § 80.1473(e)(1)-(5). To assert this affirmative defense, Defendant must submit a written report to EPA including all pertinent supporting documentation demonstrating that the requirements of 40 C.F.R. § 80.1473(e)(1)-(5) are met. The written report must be submitted within 30 Days of Defendant either discovering or being notified of the invalidity of the RINs at issue.

29.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

30.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

31.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

32.     Stipulated penalties shall continue to accrue as provided in Paragraph 29 during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement of the Parties or by a decision of EPA for which NGL did not seek judicial review under Paragraph 47, Defendant shall pay

10

accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

      b.    If NGL seeks judicial review of EPA's decision pursuant to Paragraph 47 and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

      c.    If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

33.    <u>Obligations Prior to the Effective Date</u>. Upon the Effective Date, the stipulated penalty provisions of this Decree shall be retroactively enforceable with regard to any and all violations of Paragraph 14 that have occurred prior to the Effective Date, provided that stipulated penalties that may have accrued prior to the Effective Date may not be collected unless and until this Consent Decree is entered by the Court.

34.    Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 11, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

35.    If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

11

36.     The payment of penalties and interest, if any, shall not alter in any way Defendant's obligation to complete the performance of the requirements of this Consent Decree.

37.     <u>Non-Exclusivity of Remedy</u>. Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XIII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to seek any other relief it deems appropriate for Defendant's violation of this Decree or applicable law, including but not limited to an action against Defendant for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX.     FORCE MAJEURE

38.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

39.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by e-mail to EPA within 72 hours of when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in

12

writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

40.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

41.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

42.     If Defendant elects to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), it shall do so no later than 10 Days after receipt of EPA's notice.

13

In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 38 and 39. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## X. DISPUTE RESOLUTION

43.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Decree.

44.     Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 45 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

45.     Formal Dispute Resolution. Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United

14

States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

46. The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

47. Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XVI (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

48. The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

49. The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with

15

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 32. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VIII (Stipulated Penalties).

## XI. INFORMATION COLLECTION AND RETENTION

50. Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

51. At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA. Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the

16

name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

52.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

53.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XII.    CERTIFICATION

54.     Defendant hereby certifies, to the best of its knowledge and belief, after thorough inquiry, (a) that it has submitted to the United States financial information that fairly, accurately, and materially sets forth its financial circumstances; (b) that those circumstances have not materially changed between June 30, 2018 and the date that Defendant signed this Consent Decree; and (c) that it does not have any insurance policies that may cover any payment of a civil penalty relating to this matter.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

55.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging against Defendant and its parent entities.

17

56.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. Except as expressly provided in Paragraph 55, this Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or its implementing regulations, or under other federal laws, regulations, or permit conditions.

57.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations. Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the regulations at 40 C.F.R. Part 80, Subpart M, or with any other provisions of federal, State, or local laws, regulations, or permits.

58.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

59.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

### XIV.   26 U.S.C. § 162(f)(2)(a)(ii) IDENTIFICATION

60.     For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), performance of Paragraphs 14-18 of Section VI (RIN Retirement Requirements), Paragraphs 20-21 of Section VII (Reporting

18

Requirements), and Paragraphs 50-51 of Section XI (Information Collection and Retention) is restitution or required to come into compliance with law.

## XV.  COSTS

61.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XVI.  NOTICES

62.     Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

| | |
|---|---|
| As to the United States by email: | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-2-1-11163 |
| As to the United States by mail: | EES Case Management Unit<br>Environment and Natural Resources Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-2-1-11163 |
| As to EPA: | Director, Air Enforcement Division<br>Office of Enforcement and Compliance Assurance<br>U.S. Environmental Protection Agency<br>1200 Pennsylvania Avenue, N.W. Mail Code 2422A<br>Washington, D.C. 20460<br><br>Jeff Kodish<br>Attorney-Advisor<br>Air Enforcement Division<br>Office of Enforcement and Compliance Assurance<br>U.S. Environmental Protection Agency<br>1595 Wynkoop Street (8MSU)<br>Denver, Colorado 80202<br>Telephone: (303) 312-7153<br>Email: kodish.jeff @epa.gov |

19

As to Defendant:                    Kurston P. McMurray
                                    Sr. Vice President/General Counsel/ Secretary
                                    NGL Energy Partners LP
                                    6120 S. Yale Ave., Suite 805
                                    Tulsa, Oklahoma 74136
                                    (918) 236-4785
                                    Kurston.McMurray@nglep.com

                                    Jacob Hollinger
                                    McDermott Will & Emery LLP
                                    340 Madison Avenue
                                    New York, NY 10173
                                    (212) 547-5834
                                    jhollinger@mwe.com

                                    Kevin J. Visser #AT0008101
                                    Simmons Perrine Moyer Bergman, PLC
                                    115 3rd Street SE, Suite 1200
                                    Cedar Rapids, Iowa 52401-1266
                                    (319) 896-1266
                                    kvisser@simmonsperrine.com

                                    James G. Powers #AT0011637
                                    McGrath North Mullin & Kratz, PC LLO
                                    First National Tower, Suite 3700
                                    1601 Dodge Street
                                    Omaha, NE 68102
                                    (402) 633-1480
                                    jpowers@mcgrathnorth.com

    63.     Any Party may, by written notice to the other Parties, change its designated notice

recipient or notice address provided above.

    64.     Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XVII. RETENTION OF JURISDICTION

    65.     The Court shall retain jurisdiction over this case until termination of this Consent

Decree, for the purpose of resolving disputes arising under this Decree or entering orders

20

modifying this Decree, pursuant to Sections X and XVIII, or effectuating or enforcing compliance with the terms of this Decree.

## XVIII. MODIFICATION

66.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

67.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution). The Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XIX.   TERMINATION

68.     After Defendant has completed the requirements of Section VI (RIN Retirement Requirements), has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, and has complied with all other requirements of this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

69.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

70.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section X. However, Defendant shall not seek Dispute

Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

71. The requirements to replace invalid RINs under Section VI (RIN Retirement Requirements) and any associated stipulated penalties shall survive regardless of the termination of this Consent Decree.

## XX. PUBLIC PARTICIPATION

72. This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XXI. SIGNATORIES/SERVICE

73. Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

74. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendant agrees to accept service of process by mail or email with respect to all matters arising under or relating to this Consent Decree.

22

## XXII. INTEGRATION

75.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXIII. FINAL JUDGMENT

76.     Being that there is no just reason for delay, upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

ENTERED this ___ day of ___, 2018

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA

23

Signature Page for *United States of America v. NGL Crude Logistics, LLC* Consent Decree

FOR THE UNITED STATES:

9/23/18
Date

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

9/25/18
Date

JAMES D. FREEMAN, Senior Attorney
ALEXANDRA B. SHERERTZ, Trial Attorney
LAURA A. THOMS, Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division

Signature Page for *United States of America v. NGL Crude Logistics, LLC* Consent Decree

FOR THE UNITED STATES:

PETER E. DEEGAN
United States Attorney
Northern District of Iowa

9/25/2018
Date

Matthew J Cole

MATTHEW J. COLE
Assistant United States Attorney
Northern District of Iowa

Signature Page for *United States of America v. NGL Crude Logistics, LLC* Consent Decree

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

9/26 / 18
_____
Date

Susan Parker Bodine
SUSAN PARKER BODINE
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

9/26/18
_____
Date

Rosemarie Kelley
ROSEMARIE KELLEY
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460

9/24/2018
_____
Date

PHILLIP A. BROOKS
Director
Air Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, N.W.
Mail Code 2422A
Washington, D.C. 20406

9/21 / 18
_____
Date

JEFF KODISH
Fuels Team Leader, Attorney Advisor
MATTHEW KRYMAN
Attorney Advisor
Air Enforcement Division
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1595 Wynkoop Street (8MSU)
Denver, CO 80202

26

Signature Page for *United States of America v. NGL Crude Logistics, LLC* Consent Decree

FOR NGL CRUDE LOGISTICS, LLC:

9/20/18
Date

Kurston P. McMurray, its Executive Vice President /
General Counsel